(65 App. Div. 614.)

## OSBORN v. GILLIAMS.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. CORPORATIONS—TREASURER—DUTY TO FURNISH STATEMENT—LIABILITY FOR FAILURE AFTER DISSOLUTION.

A treasurer of a corporation, which has been dissolved de facto, is not liable to a penalty for failing to furnish a stockholder, within 30 days after demand, a statement showing the condition of such corporation, as required by Laws 1890, c. 564, as amended Laws 1892, c. 688.

2. SAME—RESIGNATION OF TREASURER—EFFECT.

A treasurer of a corporation cannot, by resigning his office as treasurer, escape the penalty for failing to furnish a stockholder, within 30 days after demand, a statement showing the condition of the corporation, as required by Laws 1890, c. 564, as amended Laws 1892, c. 688.

Appeal from special term, New York county.

Action by Ellen G. Osborn against Richard S. Gilliams. Judgment overruling a demurrer to defendant's answer, and plaintiff appeals. Affirmed.

The following is the opinion of the court below (LEVENTRITT, J.):

"The complaint alleges that the plaintiff was a stockholder owning more than 5 per centum of the capital stock of John Osborn's Sons & Co., a domestic corporation, at a time when the defendant was treasurer thereof; that on the 1st day of November, 1899, she made a written request of the defendant as such treasurer for a statement under oath of the affairs of the corporation pursuant to the statute in such case made and provided, and which statute is set out in the pleadings (Laws 1890, c. 564, as amended Laws 1892, c. 688); that 30 days have elapsed since the making of the request without a compliance on the defendant's part; and judgment is prayed in the sum of the statutory penalty of $50, and in the further sum of $10 for each day since the expiration of the 30 days. Three defenses are interposed. The first is, in effect, that the defendant resigned his office as treasurer on the 15th day of November, 1899; that is, before the 30-day period in which to make and deliver the statement had elapsed. The second defense is, in effect, that the John Osborn's Sons & Co. dissolved on the 15th day of November, 1899, and that a certificate of dissolution was issued by the secretary of state similarly before the 30-day period had terminated. The third defense is, in effect, that on the 12th day of October, 1899, at a meeting of the stockholders two-thirds in amount of the stock outstanding, including that of the plaintiff, was represented, and the holders of all thereof consented to the dissolution of the corporation, and to the adoption of appropriate steps to accomplish that end. The first defense presents the only serious question. The second and third are sufficient in law. If the corporation was dissolved, either in law or in fact, no report or statement could have been required. A defunct corporation no longer has a treasurer, and cannot, through him or through anyone, be called upon to render a statement. Inasmuch as the object of the provision is to enable the shareholder to determine from the financial statement of the corporation the value of his shares of stock (McCrea v. Bedell, 9 Misc. Rep. 372, 373, 29 N. Y. Supp. 705), the dissolution removed the necessity and frustrated the purpose of the statutory provision. On this branch the case is like those where directors have been held relieved from filing the annual reports under similar circumstances. Tayl. Priv. Corp. § 770; Bonnell v. Griswold, 80 N. Y. 138; Bank v. Studwell, 74 N. Y. 621; Witherow v. Slayback, 11 Misc. Rep. 526, 32 N. Y. Supp. 746; Reduction Co. v. De Leon, 29 Misc. Rep. 130, 60 N. Y. Supp. 262. In view of the de facto dissolution set forth in the second defense it is unnecessary to consider the sufficiency of the estoppel therein pleaded. As to the first defense, I am of the opinion that the demurrer is good. The treasurer cannot by resigning his office escape the liability cast upon him by the

statute. The duty to render a statement attached the moment the written request was made of him by the shareholder. The 30-day provision is solely for his benefit and convenience. Its obvious purpose is to afford the fiscal officer charged with the duty the opportunity of making the necessary examination and inquiry in order to enable him to comply with the request. But the obligation, rests upon him the moment the demand is made; he cannot avoid it by surrendering his office; the duty has attached; he may, at his option, discharge it at any time within the 30 days; but he cannot relieve himself of the responsibility. The effect of the time provision upon the shareholder is merely a suspension of his remedy; the right was complete with the filing of the request. I am aware that the statute is highly penal, and must accordingly be strictly construed. This does not mean, however, that a construction should be adopted which would defeat its beneficial purpose. Demurrer as to the first defense sustained. Demurrer as to the second and third defenses overruled. Settle order on notice."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

W. P. Pickett, for appellant.
W. F. Cooke, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of court below.

(69 App. Div. 37.)

In re PRICE et al.

In re CROCKER.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

1. INSOLVENCY—SPECIAL PARTNER—PAYMENT OF FIRM DEBTS—CLAIM—ALLOW-ANCE.
   A special partner of a firm of stockbrokers at the time of the general assignment of the firm was its debtor, and had pledged stocks to it as collateral. The firm had repledged the stock to secure its debts. The owner, to regain the stocks, after tendering the amount of his debt to the assignee, by agreement with him, paid to the firm's pledgees the market value of his stocks; the amount so paid (being largely in excess of his debt) being credited by such pledgees on the firm debts, and to him by the assignee to the amount necessary to liquidate his debt to the firm. The collateral pledged to the firm creditors, who held the petitioner's stocks, realized a large sum in excess of the debts so secured; such excess being returned to the assignee. *Held*, that by the assignment of the partnership the firm was dissolved, and the status and relative rights of such special partner and the firm creditors were then fixed, and the special partner might subsequently become a creditor of the firm, entitled to a pro rata distribution of its assets, notwithstanding Partnership Law, § 37, providing that a special partner of an insolvent firm shall not be allowed to claim as a creditor until other creditors are satisfied.

2. SAME—PLEDGE OF STOCKS—REPLEDGE—OWNER—CREDITOR.
   The fact that the stocks of the special partner were repledged by the firm to secure its debts did not destroy his title thereto, or change his claim as owner to a claim as a creditor, within the meaning of Partnership Law, § 37.

8. SAME—TENDER—RELEASE OF LIEN.
   The tender by the special partner of the amount of his debt to the firm, and demand for his stocks pledged to secure such debt, released such stocks from the lien of the firm.